UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HIAWATHA KING, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>*Commissioner of Social Security Administration*, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.<br>11-11709-RBC |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR JUDGMENT AFFIRMING THE COMMISSIONER'S DECISION**

This is an appeal from a final decision by the Commissioner of Social Security ("Commissioner") granting plaintiff's application for disability benefits through February 23, 2011, but denying benefits thereafter. The Commissioner's decision should be affirmed because it is supported by substantial evidence in the record.

FACTS

Plaintiff had surgery on his right knee on February 23, 2010 (Transcript of the Record ("Tr.") at 300-02) and July 23, 2010 (Tr. 443-44). On August 11, 2010, he could walk with a cane (Tr. 442). By September 14, 2010, his gait and station were normal, and Plaintiff was cleared to exercise (Tr. 507).

In a physical therapy session on September 15, 2010, Plaintiff reported that his pain was only a three on a ten-point scale (Tr. 510). On September 17, 2010, he rated his pain with pain medication as a zero on a ten-point scale (Tr. 511). Plaintiff said he felt improvements over the last month, he felt "great" after his physical therapy appointments, he could walk home after his appointments rather than take the bus, and he felt an increase in motion and strength. Id. He noted

that his nighttime pain was decreased, and was never worse than a four on a ten-point scale. Id. On September 22, 2010, Plaintiff reported that he walked to his physical therapy appointment, his knee felt better, and his pain was only a three on a ten-point scale (Tr. 513).

On September 27, 2010, Phyllis Sandell, M.D., an expert medical consultant with the state department of disability determination services, reviewed Plaintiff's medical records. She opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, could stand or walk with normal breaks for at least two hours per workday, could sit with normal breaks for about six hours per workday, and could push or pull occasionally with the right leg (Tr. 464). Dr. Sandell also opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 465). Finally, she opined that Plaintiff's condition was expected to improve (Tr. 464).

On September 29, 2010, Plaintiff told his physical therapist that he did laundry, which entailed carrying multiple heavy loads of laundry up and down three flights of stairs (Tr. 515). Although he said this bothered his knee, he only rated his pain as a five on a ten-point scale. In a routine medical appointment on September 30, 2010, Plaintiff reported no pain and no concerns (Tr. 484). He was encouraged to exercise (Tr. 485).

In physical therapy appointments on October 1, October 6, October 8, and October 14, 2010, Plaintiff continued to progress well with strength and range of motion (Tr. 517-21). On October 14, 2010, his knee was feeling better and he rated his pain as a three on a ten-point scale (Tr. 520). In a routine physical examination on October 15, 2010, Plaintiff had no pain and no concerns (Tr. 478-79). He denied joint pain and swelling, and denied muscle weakness and stiffness (Tr. 479). Plaintiff's gait and station were normal, and he was cleared to exercise (Tr. 480). In a physical therapy session on October 20, 2010, Plaintiff reported that he had been doing a lot of yard work,

but his pain was still only a four on a ten-point scale (Tr. 523). On October 28, 2010, he reported "doing yard work for a job" in which he was "kneeling for many hours," but rated his pain as only a five on a ten-point scale (Tr. 524).

Plaintiff continued to have increased tolerance to daily activities such as walking, climbing stairs, kneeling, and squatting (Tr. 525). In physical therapy sessions on November 1, November 8, November 11, and November 17, 2010, Plaintiff continued to tolerate therapy well (Tr. 525-30). Plaintiff was discharged from physical therapy on November 19, 2010 (Tr. 531-33). He was experiencing decreasing pain and rated his pain as a one on a ten-point scale (Tr. 531). He was "feeling much better and [his] knee [was] bending more and [felt] stronger and able to perform daily and work activities" (Tr. 531).

On December 15, 2010, Plaintiff had a follow-up visit with his knee surgeon, Dr. Jeffrey Zarin. Plaintiff could ambulate independently with no assistive devices, was "not having severe pain," and could "live with the amount of motion" he had (Tr. 534). Although there were still some complications with the knee, Plaintiff and Dr. Zarin agreed to wait several months to see if the situation improved (Tr. 534-35).

On February 23, 2011, Plaintiff saw Dr. Zarin again. Plaintiff stated that "overall the pain in his knee [was] not too bad" and "he [had] pain only two days a week or so" (Tr. 536). He felt some instability, but it only occurred "occasionally," and was "not common" and "not limiting to him." Id. His range of motion was improved, and his knee laxity caused some "discomfort" that was "reasonably well tolerated." Id. His synovitis[1] was decreased, and "his leg overall [was] improved." Id. Dr. Zarin observed that further surgery might be able to correct the remaining

---

[1] Synovitis is inflammation. Stedman's Medical Dictionary at 1920 (28th ed.).

instability, but also stated that there were "different options" available. Id. Plaintiff told Dr. Zarin that he "[did] not want to go ahead with surgical intervention." Id. Instead, with Dr. Zarin's approval, Plaintiff decided to continue using his knee support and pain medicines, with the intention of making further decisions in "about three or four months;" i.e., approximately May or June 2011.

There is no record of any treatment after February 23, 2011. At the administrative hearing, Plaintiff's attorney stated that Dr. Zarin declined to provide a written medical opinion to support Plaintiff's disability claim (Tr. 73).

## PROCEDURAL HISTORY

On March 19, 2010, Plaintiff applied for disability insurance benefits and supplemental security income (Tr. 8, 25, 88-89, 154-67). These applications were denied initially on June 25, 2010 (Tr. 94-97), and were denied again on reconsideration on October 5, 2010 (Tr. 100-05). On December 1, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 111-12).

A hearing was held before ALJ Constance D. Carter on March 1, 2011 (Tr. 42-86). Plaintiff testified at the hearing, and was represented by counsel (Tr. 42). An impartial vocational expert also testified (Tr. 42). On April 21, 2011, the ALJ issued a decision finding that Plaintiff was disabled from November 10, 2009 to February 23, 2011, but not thereafter (Tr. 25-41).

The Decision Review Board selected Plaintiff's claim for review (Tr. 20). On May 22, 2011, responsibility for reviewing the case was transferred from the Decision Review Board to the Appeals Council (Tr. 14). On July 21, 2011, Plaintiff's attorney submitted written argument to the Appeals Council, arguing that the ALJ should not have found that Plaintiff's disability ended on February 23, 2011 (Tr. 261-62). On September 1, 2011, the Appeals Council declined to review Plaintiff's

case, making the ALJ's decision the Commissioner's final decision subject to judicial review (Tr. 1-6).

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive as long as they are supported by substantial evidence. 42 U.S.C. § 405(g). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the ALJ. Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981). Substantial evidence supporting the Commissioner's decision exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Id. This is true "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); accord Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence") (internal quotation marks omitted). The quantum of proof necessary to sustain the Commissioner's decision is less than a preponderance of the evidence. Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003).

## ARGUMENT

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled after February 23, 2011. After his second knee surgery in July 2010, Plaintiff's medical records show that his knee pain and functioning steadily improved throughout the latter half of 2010. He was successfully discharged from physical therapy and cleared to return to work activities, he consistently stated that his pain was absent or minimal, and there is no evidence of any medical

treatment after February 23, 2011.

### A. The ALJ properly evaluated Dr. Zarin's treatment notes

Contrary to Plaintiff's argument (Plaintiff's Motion ("Pl. Mtn.") at 5-8), the ALJ properly evaluated Dr. Zarin's treatment notes, particularly his February 2011 note. As the ALJ observed (Tr. 34-35), in that visit with Dr. Zarin, Plaintiff stated that "overall the pain in his knee [was] not too bad" and "he [had] pain only two days a week or so" (Tr. 536). He felt some instability, but it only occurred "occasionally," and was "not common" and "not limiting to him." Id. His range of motion was improved, and his knee laxity caused some "discomfort" that was "reasonably well tolerated." Id. His synovitis was decreased, and "his leg overall [was] improved." Id.

Although Plaintiff claims that Dr. Zarin stated that additional major surgery was "the only treatment option available" (Pl. Mtn. at 6), Dr. Zarin actually stated that there were "different options" available, of which a revision surgery was "the only surgical option" (Tr. 536) (emphasis added). Surgery was obviously unnecessary; Plaintiff told Dr. Zarin that he "[did] not want to go ahead with surgical intervention" (Tr. 536). Instead, with Dr. Zarin's approval, Plaintiff decided to continue using his knee support and pain medicines, with the intention of making further decisions in "about three or four months;" i.e., around May or June 2011. There is no evidence of any such follow-up appointment. When Plaintiff continued to press his case to the Social Security Appeals Council on July 21, 2011, he failed to submit any additional medical records to indicate that he underwent further surgery or treatment (Tr. 261-62). See 20 C.F.R. § 404.976(b)(1) (allowing claimant to submit new and material evidence to Appeals Council).

Moreover, in evaluating Dr. Zarin's February 2011 treatment note, the ALJ did not impermissibly interpret raw medical evidence or substitute her judgment for that of medical experts.

Plaintiff cites no authority for the proposition that an ALJ may not evaluate medical treatment notes. Indeed, an ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians." Evangelista v. Sec'y of HHS, 826 F.2d 136, 144 (1st Cir. 1987).

To the extent that Plaintiff complains that no other doctor reviewed Dr. Zarin's February 2011 treatment note, the First Circuit has already rejected this line of argument: "The basic idea which the claimant hawks—the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case—is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter." Id. Moreover, the February 2011 treatment note contains information that is susceptible to common-sense judgments by a lay person. Statements that Plaintiff's pain was "not too bad," his instability only occurred "occasionally" and was "not limiting to him," his range of motion was improved, his inflammation was decreased and "his leg overall [was] improved" (Tr. 536) are not the kind of highly technical medical evidence that would require interpretation from a medical expert.

The cases that Plaintiff cites in support of his motion are distinguishable. In Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), the ALJ improperly rejected a treating source opinion. There is no such issue in this case; in fact, Dr. Zarin declined to provide such an opinion (Tr. 73). In Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996), unlike in this case, "the record contain[ed] no analysis of functional capacity by a physician or other expert." Similarly, in Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998), there was no "proper, medically determined RFC [residual functional capacity assessment] in the record." In this case, in contrast to both Manso-Pizarro and Rohrberg, Dr. Sandell analyzed Plaintiff's residual functional capacity (Tr. 463-70), and the ALJ relied on Dr. Sandell's opinion (Tr. 35). In Gordilis v. Sec'y of HHS, 921

F.2d 327, 329 (1st Cir. 1990), the Court affirmed the Commissioner's denial of benefits and noted that an ALJ may "render[] common-sense judgments about functional capacity based on medical findings."  Thus, Gordilis actually supports the Commissioner's position, and not the Plaintiff's.

Finally, Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) is inapposite because it dealt with a claimant whose condition "deteriorated" significantly after the medical expert rendered his opinion.  In contrast, in this case, Plaintiff's condition improved after Dr. Sandell's opinion.  For example, on September 30, 2010, Plaintiff had no concerns and no pain (Tr. 484).  On October 15, 2010, he again had no concerns and no pain, he denied joint pain, swelling, weakness, and stiffness, and he had normal gait and station (Tr. 478-80).  On October 28, 2010, he did yard work for a job and "was kneeling for many hours" (Tr. 524).  He continued to have increased tolerance to daily activities including walking, climbing stairs, kneeling, and squatting (Tr. 525).  On November 19, 2010, Plaintiff was experiencing decreasing pain and rated his pain as merely a one on a ten-point scale (Tr. 531).  He was "feeling much better and [his] knee [was] bending more and [felt] stronger and able to perform daily and work activities" (Tr. 531).  On December 15, 2010, he could ambulate independently with no assistive devices, he was "not having severe pain," and he could "live with the amount of motion" he had (Tr. 534).  In February 2011, Plaintiff stated that "overall the pain in his knee [was] not too bad" and "he [had] pain only two days a week or so" (Tr. 536).  He felt some instability, but it only occurred "occasionally," and was "not common" and "not limiting to him."  Id.  His range of motion was improved, and his knee laxity caused some "discomfort" that was "reasonably well tolerated."  Id.  His synovitis was decreased, and "his leg overall [was] improved."  Id.

In short, the ALJ properly evaluated Dr. Zarin's February 2011 treatment note.  In so doing,

8

the ALJ merely discharged his duty to "piece together the relevant medical facts from the findings and opinions of multiple physicians." Evangelista, 826 F.2d at 144.

  B. The ALJ properly evaluated Plaintiff's credibility

Notwithstanding Plaintiff's argument (Pl. Mtn. at 8-11), the ALJ properly evaluated Plaintiff's credibility. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987).

The ALJ pointed to specific facts that undermined Plaintiff's claim that he was unable to work because of his knee condition. The ALJ cited (Tr. 35) Plaintiff's post-surgery physical therapy. Notes from the physical therapy sessions indicate that Plaintiff did yard work for a job and "was kneeling for many hours" (Tr. 524). He continued to have increased tolerance to daily activities including walking, climbing stairs, kneeling, and squatting (Tr. 525). He was experiencing decreasing pain and rated his pain as merely a one on a ten-point scale (Tr. 531). He was "feeling much better and [his] knee [was] bending more and [felt] stronger and able to perform daily and work activities" (Tr. 531).

The ALJ also cited (Tr. 35) Dr. Zarin's treatment notes. Those notes reflect that in December 2010, Plaintiff could ambulate independently with no assistive devices, was "not having severe pain," and could "live with the amount of motion" he had (Tr. 534). In February 2011, Plaintiff stated that "overall the pain in his knee [was] not too bad" and "he [had] pain only two days a week or so" (Tr. 536). He felt some instability, but it only occurred "occasionally," and was "not common" and "not limiting to him." Id. His range of motion was improved, and his knee laxity

caused some "discomfort" that was "reasonably well tolerated." Id. His synovitis was decreased, and "his leg overall [was] improved." Id.

The ALJ also cited Plaintiff's activities of daily living (Tr. 35). Plaintiff testified in March 2011 that he could walk about a mile to visit his girlfriend (Tr. 66-67). He was taking a computer training course twice per week (Tr. 58). He could travel independently on the subway (Tr. 61, 64-65), and he could go out to eat with his girlfriend (Tr. 65). He could climb several flights of stairs; he lived on the third floor of a house with no elevator (Tr. 60). Contrary to Plaintiff's argument (Tr. 8-9), the ALJ properly cited these activities. See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("The hearing officer properly utilized Teixeira's testimony regarding her activities of daily living in assessing her credibility regarding the intense pain. While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding."). The case that Plaintiff cites, Rohrberg, 26 F. Supp. 2d at 311, is distinguishable. In Rohrberg, unlike in this case, "The ALJ did not state any specific reason for finding that Rohrberg was not a credible witness. . . . The ALJ made no reference to . . . any other observations indicating a basis for discrediting her testimony, such as contrary medical evidence or observation of activities which might reflect negatively on her credibility." 26 F. Supp. 2d at 310.

Also contrary to Plaintiff's argument (Pl. Mtn. at 9), the ALJ did not "ignore" Plaintiff's testimony about his use of Percocet. The ALJ specifically acknowledged this testimony in the decision: "The claimant testified in March of 2011 that he was taking Percocet two to three times per week for pain . . ." (Tr. 34). Moreover, Plaintiff's professed need to take powerful pain-killers is belied by his statements that he had no pain (Tr. 478, 484), his pain was "not too bad" (Tr. 536),

and his pain was decreasing and was only a one on a ten-point scale, and he was feeling much better (Tr. 531).

Similarly, the ALJ was not required to credit Plaintiff's uncorroborated testimony that he needed not only to stand but also to walk around after sitting for prolonged periods at his computer class (Tr. 66). Plaintiff's argument in this regard (Pl. Mtn. at 9) ignores Plaintiff's testimony that he can sit for about ninety minutes before he needed to "stand and stretch" (Tr. 66-67). The ALJ adequately factored this into the decision by finding that Plaintiff needed an hourly sit/stand option (Tr. 34). To the extent that Plaintiff suggests that he needed not only to stand but also to walk around after sitting for prolonged periods at his computer class (Tr. 66), the ALJ was not required to credit this uncorroborated testimony, especially in light of the physical therapy records, treatment notes, and other testimony cited above, which indicates that Plaintiff's knee pain and functioning were far better than he claimed.

Nor is there any merit to Plaintiff's contention that the ALJ violated Avery v. Sec'y of HHS, 797 F.2d 19 (1st Cir. 1986). Although Avery laid out various factors for an ALJ to consider in the credibility analysis, "the First Circuit has established no requirement that an ALJ expressly address each factor in her written decision." Dorego v. Astrue, no. 10–11768–DPW, 2012 WL 603196, at *15 (D. Mass. Feb. 24, 2012). The ALJ clearly considered the Avery factors. Contrary to Plaintiff's argument (Pl. Mtn. at 10), the ALJ considered "[t]ype, dosage, effectiveness, and adverse side-effects of any pain medication." Avery, 797 F.2d at 29. As explained above, the ALJ specifically acknowledged Plaintiff's testimony regarding pain medication: "The claimant testified in March of 2011 that he was taking Percocet two to three times per week for pain . . ." (Tr. 34). As also explained above, Plaintiff's professed need to take powerful pain-killers is belied by his

statements that he had no pain (Tr. 478, 484), his pain was "not too bad" (Tr. 536), and his pain was decreasing and was only a one on a ten-point scale, and he was feeling much better (Tr. 531). Also contrary to Plaintiff's argument (Pl. Mtn. at 10), the ALJ considered "[t]reatment, other than medication, for relief of pain." Avery, 797 F.2d at 29. For example, the ALJ cited (Tr. 35) Plaintiff's physical therapy. Notes from the physical therapy sessions indicate that Plaintiff did yard work for a job and "was kneeling for many hours" (Tr. 524). He continued to have increased tolerance to daily activities including walking, climbing stairs, kneeling, and squatting (Tr. 525). He was experiencing decreasing pain and rated his pain as merely a one on a ten-point scale (Tr. 531). He was "feeling much better and [his] knee [was] bending more and [felt] stronger and able to perform daily and work activities" (Tr. 531).

      C.      <u>The ALJ properly evaluated the state agency doctors' opinions</u>

Contrary to Plaintiff's argument (Pl. Mtn. at 12-13), the ALJ properly evaluated the state agency medical opinions. The two state agency doctors who reviewed the evidence, Dr. Connelly and Dr. Sandell, agreed that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk at least two hours per workday, sit about six hours per workday, and push or pull occasionally with the right leg (Tr. 422, 464). They also agreed that he could occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 423, 465). Significantly, both doctors also agreed that Plaintiff's condition was expected to improve (Tr. 422, 464). The two state agency doctors rendered their opinions on June 10, 2010 and September 27, 2010, respectively (Tr. 428, 470).

The ALJ was justified in finding that these opinions were entitled to "little weight" (Tr. 32) with respect to Plaintiff's condition while he recovered from knee surgery. The ALJ explained that

"during the period of rehabilitation, the claimant would have been absent from work more than once a month" (Tr. 32). This finding was eminently reasonable given that Plaintiff had eighteen medical and physical therapy appointments from September 14, 2010 through November 19, 2010, an average of about two appointments per week (Tr. 477-533).

After November 19, 2010, however, Plaintiff had just two appointments total: December 15, 2010 and February 23, 2011 (Tr. 534-43), an average of less than one appointment per month. Thus, the ALJ properly gave "significant weight" to the state agency doctors' opinions for the period after February 23, 2011 (Tr. 35), because the evidence no longer suggested that Plaintiff would be absent from work as frequently. Indeed, there is no record of any treatment after February 23, 2011. By that time, Plaintiff had been successfully discharged from physical therapy (Tr. 531). He was experiencing decreasing pain and rated his pain as merely a one on a ten-point scale. Id. He was "feeling much better and [his] knee [was] bending more and [felt] stronger and able to perform daily and work activities." Id. The pain in his knee was "not too bad," his leg was improved overall, and his treating doctor only wanted to see him again in "three or four months" (Tr. 536). In other words, the ALJ's finding that Plaintiff was disabled in 2010 but not disabled after February 23, 2011 was consistent with the state agency doctors' opinions that Plaintiff's condition was expected to improve (Tr. 422, 464).

   D. <u>The ALJ properly allowed the vocational expert to testify via telephone</u>

Contrary to Plaintiff's argument (Pl. Mtn. at 13-16), the ALJ properly allowed the vocational expert ("VE") to testify via telephone at the administrative hearing. Since Plaintiff filed his motion on April 16, 2012, the U.S. Court of Appeals for the First Circuit has essentially disposed of this issue in the Commissioner's favor. On May 4, 2012, the First Circuit issued its decision in <u>Goodwin</u>

v. Astrue, No. 11-1751, affirming the Commissioner's denial of benefits and rejecting the claimant's argument that the ALJ improperly allowed a medical expert to testify via telephone at the hearing. The Court noted that the claimant "[did] not show that he suffered any harm with respect to the telephone testimony or administrative procedures." The same is true in this case. Plaintiff does not identify any harm that he suffered because the VE testified via telephone (Pl. Mtn. at 13-16), nor can he.

Although the First Circuit did not extensively discuss this issue in its decision, the Court stated that it was affirming "for substantially the district court's reasons" and it was rejecting the claimant's argument regarding telephone testimony "[f]or the reasons developed in the district court." The District of New Hampshire rejected the claimant's argument regarding telephone testimony by holding, among other things: the claimant failed to show he was prejudiced by the manner of testimony; the regulations the claimant cited, including 20 C.F.R. § 404.950, do not disallow telephone testimony; the Social Security Hearings, Appeals and Litigation Law Manual allows expert testimony via telephone[2]; and at least one other U.S. Court of Appeals persuasively held that receiving expert testimony via telephone did not violate a claimant's right to due process, see Hepp v. Astrue, 511 F.3d 798, 805-06 (8th Cir. 2008). Goodwin v. Astrue, no. 10–cv–233–PB, 2011 WL 1630927, at *11 (D.N.H. Apr. 11, 2011), aff'd, 2011 WL 1630282 (D.N.H. Apr. 29, 2011). The same reasons apply in this case. Given that the First Circuit has affirmed the Commissioner's use of expert testimony via telephone, Plaintiff's argument fails.

---

[2] "The preferred method for obtaining [medical expert] or VE opinion is through in-person testimony <u>or testimony via telephone</u> or video teleconference at hearing." Hearings, Appeals and Litigation Law Manual at I-2-5-30, available at 1994 WL 637367 (emphasis added).

CONCLUSION

Substantial evidence supports the ALJ's determination. Therefore, Defendant's Motion for Judgment Affirming the Commissioner's Decision should be granted.

                                                   Respectfully Submitted,

                                                   CARMEN M. ORTIZ
                                                   United States Attorney

                              By:    */s/ Eve A. Piemonte Stacey*
                                                 Eve A. Piemonte Stacey
                                                 Assistant United States Attorney
                                                 United States Attorney's Office
                                                 John Joseph Moakley U.S. Courthouse
                                                 1 Courthouse Way, Suite 9200
                                                 Boston, MA 02210
                                                 617-748-3100
                                                 Fax: 617-748-3969
Dated: May 31, 2012                      Email: Eve.Stacey@usdoj.gov

Of Counsel for the Defendant:

Timothy A. Landry, Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
Kennedy Federal Building, Room 625
Boston, Massachusetts 02203

**CERTIFICATE OF SERVICE**

       I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                               */s/ Eve A. Piemonte Stacey*
                                               Eve A. Piemonte Stacey
Dated: May 31, 2012                      Assistant United States Attorney